**Joseph C. MASI, Plaintiff-Appellant,**

v.

**FORD CITY BANK AND TRUST COMPANY, an Illinois Bank and Trust Company, Defendant-Appellee.**

No. 84–2185.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1985.

Decided Dec. 17, 1985.

Rehearing Denied Jan. 23, 1986.

Albert Koretzky, DiMonte & Lizak, Chicago, Ill., for plaintiff-appellant.

Larry R. Chulock, Schwartz & Freedman, Chicago, Ill., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and WRIGHT, Senior Circuit Judge.*

FLAUM, Circuit Judge.

Plaintiff Joseph C. Masi appeals the district court's dismissal of his federal cause of action based on section 1962(a)[1] of the Racketeering Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961–68 (1970) and that court's denial of his prayer for punitive damages for a breach of fiduciary duty. We reverse the district court's finding on RICO and remand for further findings on the issue of punitive damages.

---

* The Honorable Eugene A. Wright, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

1. 18 U.S.C. § 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

## I.

On October 7, 1980, the plaintiff, Joseph C. Masi ("Masi"), opened an Individual Retirement Account ("IRA") with the defendant Ford City Bank and Trust Company (the "Bank") in Chicago, Illinois. On that date Masi deposited $11,587.39 in the IRA account. Several months later, on March 25, 1981 Masi signed a guaranty for a loan made by the Bank to Michael A. Schwartz for $19,452.96. Masi guaranteed repayment to the extent of $10,000. After repaying $6,484.32 Michael D. Schwartz defaulted on the loan Masi had guaranteed, leaving an unpaid balance of $12,968.64. In June, 1982, the Bank withdrew $11,-208.31 of the funds in Masi's IRA to pay off the guaranty obligation.

Masi brought a three count action in the United States District Court, Northern District of Illinois, Eastern Division, on the basis of the Bank's alleged wrongful conversion of the funds in Masi's IRA. Count I alleged that the Bank breached its fiduciary duties as trustee of the account. Count II alleged that the Bank violated the terms of the loan guaranty agreement entered into by Masi. Count III asserted a federal cause of action based on section 1962(a) of RICO alleging that the Bank utilized the funds it withdrew to operate its own banking enterprise.

In the district court the Bank moved to dismiss all three counts of Masi's complaint for failure to state claims upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). The court denied the Bank's motion to dismiss Counts I and II, granted the Bank's motion to dismiss Count III, and *sua sponte* granted Masi a summary judgment. In addition, the district court, without explanation, denied Masi's request for punitive damages and attorney's fees. The court found that the IRA agreement itself was sufficient to create a trust relationship and that the Bank breached its attendant fiduciary duties.[2] The district court also

held that every RICO action requires the existence of a "person" separate from an "enterprise" and that the Bank cannot be both the person and the enterprise required by 18 U.S.C. § 1962(a). It is these findings that the plaintiff appeals.

## II.

As a federal court exercising diversity jurisdiction, the district court carefully reviewed and applied Illinois law in determining whether a fiduciary relationship was established when Masi opened his IRA at the Bank. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The district court held that under Illinois law an IRA is a "special deposit" created by an express agreement or other circumstances that impliedly create a trust between the depositor and the Bank. *First National Bank of Blue Island v. Estate of Philp*, 106 Ill.App.3d 360, 62 Ill.Dec. 433, 436 N.E.2d 15 (1982) (Bank did not have lien or right of set-off on decedent's IRA). Instead of creating the relationship of debtor and creditor, depositing money in an IRA in the state of Illinois creates a bailment. *Mid-City v. Mar Building Corp.*, 33 Ill.App.3d 1083, 339 N.E.2d 497 (1975). This relationship is protected in Illinois and cannot be reached in satisfaction of a depositor's general indebtedness. Thus, the district court found, and neither party appeals, that the Bank breached its fiduciary duties under the IRA agreement by using the funds in the IRA to satisfy plaintiff's obligation under the loan guaranty.

But the issue before this court is whether that breach is of sufficient magnitude and malignant character to compel punitive damages. We too look to Illinois state law for guidance on when punitive damages should be allowed. In *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 186, 23 Ill.Dec. 559, 384

---

**2.** Curiously, while the Bank does not appeal the district court's *sua sponte* granting of summary judgment for Masi, it does contest Masi's characterization of that judgment as finding that there existed a fiduciary duty, or trust, between

the Bank and Masi. As is discussed in part II of this opinion, page 399, we find that the district court clearly found that a trust relationship was formed when Masi opened an IRA at the Ford City Bank.

**400**

N.E.2d 353 (1978) the Illinois Supreme Court stated:

> It has long been established in this state that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others (*Consolidated Coal Co. v. Haenni* (1893), 146 Ill. 614, 35 N.E. 162). Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future. (*Eshelman v. Rawalt* (1921), 298 Ill. 192, 197, 131 N.E. 675.) And, while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law. *Knierim v. Izzo* (1961), 22 Ill.2d 73, 87, 174 N.E.2d 157.

In *Allabastro v. Cummins*, 90 Ill.App.3d 394, 45 Ill.Dec. 753, 413 N.E.2d 86 (Ill.App. 1980) the court applied the *Kelsay* logic to find punitive damages appropriate when a corporation breached a fiduciary duty it owed to a group of customers. *Allabastro*, like the case before us, was primarily based on breach of a contract, but the court found that exemplary damages were proper since the breach of the fiduciary relationship constituted a separate and independent tort. *Allabastro*, 45 Ill.Dec. at 756, 413 N.E.2d, at 89.

Similarily, in *Glass v. Burkett*, 64 Ill. App.3d 676, 21 Ill.Dec. 494, 381 N.E.2d 821 (1978), the court approved punitive damages against a defendant who breached a fiduciary relationship with the plaintiff in that case. In *Glass*, the court made clear that in making its determination of whether, and how much, punitive damages should be awarded the burden rests on the defendant to rebut a presumption of fraud.

> Where a fiduciary relationship exists at the time of a transaction whereby the dominant party appears to gain, the transaction is deemed presumptively fraudulent but such presumption is not conclusive and may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him. (*Jones v. Washington* (1952), 412 Ill. 436, 107 N.E.2d 672).

*Glass v. Burkett*, 21 Ill.Dec. at 497, 381 N.E.2d at 824.

■ In this case, after a thorough analysis of the relevant state law, the district court denied punitive damages and attorney fees without an explanation or an evidentiary hearing. Masi was not given an opportunity to demonstrate that the Bank acted willfully, or with such gross negligence, that it wantonly disregarded his rights, and the Bank was not given an opportunity to rebut the presumption that it tortiously defrauded Masi of the money he entrusted in the IRA. *See Kelsay, supra*, 23 Ill.Dec. at 559, 384 N.E.2d at 353. Therefore, in light of Illinois precedent, we remand to the district court for a more full hearing on the issue of exemplary damages.

■ In addition, we remand for a determination of attorney's fees because of the special nature of this "special deposit." IRAs are "special" not only in the semantic categorization of the Illinois courts, but also by the language of federal law. Section 408 of the Internal Revenue Code (26 U.S.C. § 408) is part of the Employee Retirement Income Security Act ("ERISA"), which provides, in part:

> For purposes of this section, the term 'Individual Retirement Account' means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries but only if the written governing instrument creating the trust meets the following requirements: ....

26 U.S.C. § 408(a). This section establishes seven requirements for inclusion in the trust instrument before it can qualify as an IRA trust, including that the "interest of an individual in the balance of his account is nonforfeitable." 26 U.S.C. § 408(a)(4).

The clarity of this language is convincing, if not compelling. One must recognize that IRAs are not regular savings accounts. They clearly are special deposits that constitute a trust relationship wherein the Bank owes a fiduciary duty to the depositor. To the extent that the district court believes that exemplary damages and attorney's fees may enhance this, and similar, institutions' awareness of their peculiar responsibilities, they should be most seriously considered.

■ Furthermore, in a case such as this one, where the district court found that the Bank had "clearly breached the express terms of the IRA agreement by forfeiting the funds in the IRA to pay off the balance of the defaulted loan," the plaintiff should usually not have to bear litigating costs that might equal the very corpus of the trust. We therefore remand for findings on this issue.[3]

### III.

Count III of Masi's complaint was based on subsection 1962(a) of the RICO statute and alleged a pattern of racketeering activity based on three letters received by Masi through the United States mails. Masi alleged that the letters, sent to him by the Bank, furthered a scheme to defraud Masi out of the funds in his IRA and thus formed a pattern of racketeering activity under 18 U.S.C. § 1961(5). Masi then alleged that the income the Bank derived from this racketeering activity was used to operate its own banking enterprise in violation of 18 U.S.C. § 1962(a). The district court dismissed Masi's RICO count because he brought his action against only Ford City Bank which, the district court believed, could not be both the "person" and the "enterprise" seemingly required by section 1962.

■ In the time between the district court opinion and this appeal, this court decided *Haroco, Inc. v. American National Bank and Trust Company of Chicago*, 747 F.2d 384 (7th Cir.1984), *aff'd*, —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). In that case, this court analyzed the necessary relationship between a person and an enterprise under the different subsections of 18 U.S.C. § 1962. *Id.* at 399–402. We held that subsection (c) did require separate entities as the person and the enterprise but then stated:

> However, a corporation-enterprise may be held liable under subsection (a) when the corporation is also a perpetrator. As we parse subsection (a), a "person" (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or operation of an enterprise affecting commerce. *Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate.* Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. The approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering. This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it. [Emphasis added]

*Id.* at 402.

Because the parties in *Haroco* elected not to appeal their 1962(a) claim, *id.* at 402

---

**3.** Because we note that IRAs are "special" under Illinois law and are clearly meant to be trusts under federal law, the cases from other federal circuits, and our own, that defendant cites that define fiduciary relationships under ERISA are inapplicable because none specifically involve 26 U.S.C. § 408 which delineates the characteristics of Individual Retirement Accounts. *See United Independent Flight Officers, Inc., et al. v. United Airlines, Inc. and Air Line Pilots Association International*, 756 F.2d 1274 (7th Cir.1985); *O'Toole v. Arlington Trust Co.*, 681 F.2d 94 (1st Cir.1982).

**402**

n. 21, this paragraph is essentially dicta. However, we adopt it as our holding because of the reasoning expressed in *Haroco* and because we find that this literal reading of the statute is in accord with the Supreme Court's approach in *Sedima, S.P. R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

▇ Therefore, we conclude that the district court must be reversed and that Masi may proceed against the Bank as both the person and the enterprise allegedly using the income derived from racketeering activity. In so doing we express no opinion on the merits of plaintiff Masi's 1962(a) claim or the validity of the predicate acts upon which the claim is based.