SCHREIBER DISTRIBUTING CO., a Division of Schreiber Enterprises, Inc., a California corporation, Plaintiff-Appellant,

v.

SERV–WELL FURNITURE COMPANY, INC., a California corporation; Landmark Development Corporation, a Washington corporation; John W. Lee; James A. Lee; Bernard A. Schaub; Larry Schaub; and Bill Helf, Defendants-Appellees.

No. 84–6018.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 6, 1986.

Submitted Dec. 19, 1986.

Decided Dec. 24, 1986.

Stephen J. Holtman, Simmons, Perrine, Albright & Ellwood, Cedar Rapids, Iowa, Louis W. Shaffer, Stewart & Shaffer, Los Angeles, Cal., for plaintiff-appellant.

Howard F. Daniels, Blecher, Collins & Weinstein, Los Angeles, Cal., for defendants-appellees.

Before KENNEDY, SKOPIL and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

This is an appeal from a judgment dismissing with prejudice the plaintiff's claims under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

§§ 1961–1968 (1982) (hereinafter RICO). We must decide whether the district court erred in dismissing the RICO claims and abused its discretion in failing to grant plaintiff leave to amend the complaint. We reverse and remand with instructions.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff-appellant Schreiber Distributing Company (hereinafter Schreiber) is the exclusive wholesale distributor in Southern California of appliances manufactured by Chambers Corporation (hereinafter Chambers). Defendant-appellee Serv-Well Furniture Company, Inc. (hereinafter Serv-Well) is a wholesaler and retailer of appliances. Defendants-appellees John W. Lee and Larry Schaub are officers of Serv-Well. John Lee and Larry Schaub also are owners and officers of a Washington corporation, defendant-appellee Landmark Development Corporation (hereinafter Landmark). Defendant-appellee James A. Lee is an owner, officer, and director of Landmark. Defendant-appellee Bernard A. Schaub is an owner, officer, and director of Serv-Well.

Prior to 1982, Schreiber was the principal supplier of Chambers' appliances to Serv-Well for resale by Serv-Well to consumers. In early 1982, Serv-Well sought to purchase products directly from Chambers and by-pass Schreiber, Chambers' exclusive distributor in the 48 contiguous states. To accomplish this, Serv-Well used Landmark as a "diverter." John and James Lee represented to Chambers that Landmark wished to distribute Chambers' products only in Canada and along the Alaskan North Slope. Because this arrangement would not violate Schreiber's exclusive distributorship, Chambers agreed and sent two rail cars of Chambers' products to Landmark in Washington for further transportation to Alaska. Landmark paid Chambers with funds provided by Serv-Well.

Unknown to Chambers, the rail cars were diverted during shipment by John and James Lee, Landmark, and Serv-Well to the Los Angeles area where Serv-Well sold the products in competition with Schreiber.

Schreiber filed suit in district court alleging violations of 18 U.S.C. §§ 1961–1968 (1982), along with 15 pendent state claims.[1] The defendants' motion to dismiss was granted. The RICO counts were dismissed with prejudice for failure to state a cause of action. The pendent state claims were dismissed without prejudice to filing in state court.

The district court dismissed Schreiber's RICO counts because Schreiber failed to allege: (1) a connection to organized crime; (2) a separate racketeering injury; (3) special facts relating to standing; and (4) an "enterprise" separate and distinct from the "persons" involved in the alleged scheme. The parties agree that the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), has eliminated from this appeal the first three grounds for dismissal. The defendants concede that the district court erred in requiring Schreiber to allege a connection to organized crime, a separate racketeering injury, and special facts concerning standing. *See Sedima*, 105 S.Ct. at 3284–85, 3287. Thus, the only remaining issue is whether Schreiber has alleged a RICO enterprise sufficient to withstand a motion to dismiss. We raise two additional issues *sua sponte* in reviewing the sufficiency of Schreiber's allegations: (1) whether Schreiber has alleged a pattern of racketeering activity; and (2) whether

---

**1.** The pendent state claims are: (1) fraud; (2) conspiracy to commit fraud; (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing in contract between Landmark and Chambers; (5) breach of implied covenant of good faith and fair dealing in contract between Serv-Well and Schreiber; (6) estoppel; (7) unfair competition; (9) breach of fiduciary duty; (10) tortious interference with the contract between Chambers and Schreiber; (11) conspiracy to interfere with the contract between Chambers and Schreiber; (12) tortious interference with the contract between Chambers and Landmark; (13) conspiracy to tortiously interfere with the contract between Chambers and Landmark; (14) interference with Schreiber's business advantage; and (15) conspiracy to tortiously interfere with Schreiber's business advantage.

Schreiber has alleged the RICO predicate acts with sufficient specificity under Fed.R. Civ.P. 9(b). We also must determine whether the district court abused its discretion in dismissing the RICO counts without leave to amend.

We review *de novo* the granting of a motion to dismiss for failure to state a claim upon which relief can be granted. *Miller v. Glen & Helen Aircraft, Inc.*, 777 F.2d 496, 498 (9th Cir.1985). We review "strictly" a denial of leave to amend for abuse of discretion. *Mayes v. Leipziger*, 729 F.2d 605, 608 (9th Cir.1984).

## II. PLEADING A RICO ENTERPRISE

The district court dismissed Schreiber's RICO counts because, *inter alia*, it concluded Schreiber failed to allege an "enterprise" separate and distinct from the "persons" involved in the alleged scheme. Schreiber's complaint contains allegations against the individual defendants, John Lee and James Lee, as well as the corporate defendants, Serv-Well and Landmark. We address the sufficiency of the allegations involving these two groups under separate headings.

### A. The Corporate Defendants

Paragraph 31 of the complaint alleged that defendants John Lee, James Lee, Serv-Well, and Landmark received income derived from a pattern of racketeering activity and used that income in the operation of the enterprises Serv-Well and Landmark in violation of section 1962(a). Title 18 U.S.C. § 1962(a) provides in pertinent part as follows:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

Paragraph 32 alleged that the same four defendants maintained an interest in or control of the enterprises Serv-Well and Landmark through a pattern of racketeering activity in violation of section 1962(b). Title 18 U.S.C. § 1962(b) provides in pertinent part as follows:

It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The word "person" as used in section 1962 is defined in section 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property...." An enterprise is defined in section 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity...." Because the defendant "person" can be an entity, the issue arises whether that person can also be the affected enterprise.

The courts have consistently held that in an action under section 1962(c) the "person" must be a separate and distinct entity from the "enterprise." [2] Title 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any en-

---

**2.** *See, e.g., Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633–34 (3d Cir.1984); *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 401–02 (7th Cir.1984), *aff'd on other grounds,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984); *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Bennett v. Berg*, 685 F.2d 1053, 1061–62 (8th Cir.1982), *aff'd in part, rev'd in part in reh'g en banc,* 710 F.2d 1361 (1983), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *but see United States v. Hartley*, 678 F.2d 961, 988 (11th Cir.1982), *cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983) ("A corporation may be simultaneously both a defendant and the enterprise" under section 1962(c)).

terprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Schreiber has identified the defendant corporations as "persons" and "enterprises" under section 1962(a) and (b) only. Whether an "enterprise" must be separate and distinct from the "person" under sections 1962(a) and (b) is a novel question in this circuit.[3]

The Seventh Circuit analyzed the necessary relationship between a person and an enterprise under section 1962(a) in *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The court in *Haroco* held that subsection (c) of section 1962 required separate entities as the person and the enterprise. 747 F.2d at 401–02. However, the court then recognized the significant differences between subsections (a) and (c):

> However, a corporation-enterprise may be held liable under subsection (a) when the corporation is also a perpetrator. As we parse subsection (a), a "person" (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce. Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate.

> Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering. This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.

*Id.* at 402 (footnotes omitted) (emphasis in original). Because the parties in *Haroco* elected not to appeal their section 1962(a) claim, this language is essentially dicta.

The Seventh Circuit adopted the *Haroco* dicta as the rationale for its holding in *Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397, 402 (7th Cir.1985). In *Masi* a depositor filed suit against a bank, claiming the bank had wrongfully converted funds in his Individual Retirement Account to pay off the balance of a defaulted loan guaranteed by him. *Id.* at 399. The depositor alleged the bank violated section 1962(a) of the RICO statute as well as state claims. *Id.* The Seventh Circuit held that the depositor could proceed against the bank under section 1962(a) as both the responsible "person" and the "enterprise" allegedly using income derived from racketeering activity. *Id.* at 401–02.

We find the reasoning of the Seventh Circuit in *Haroco* and *Masi* persuasive. Section 1962(a) prohibits the investment of money which has been earned through acts of racketeering in an enterprise. *See* Fitzpatrick, *Elements of a RICO Action After*

---

**3.** Appellees contend our holding in *Rae v. Union Bank*, 725 F.2d at 481 requires dismissal of Schreiber's claims under section 1962(a) and (b). This contention is without merit. *Rae v. Union Bank* concerned a claim under section 1962(c) only. Appellees argue that *Rae's* citation to *United States v. Computer Sciences Corp.*, 689 F.2d 1181, constitutes a wholesale acceptance of that case which involved claims under both sections 1962(a) and (c). We disagree.

The holding in *Rae* is narrower than the holding in *Computer Sciences* in that *Rae* concerned only section 1962(c). The citation to *Computer Sciences* indicates Ninth Circuit acceptance of *Computer Sciences* only to the extent necessary to decide *Rae's* section 1962(c) claim. *Rae* is not dispositive of Schreiber's claims under sections 1962(a) and (b). Schreiber does not allege that Serv-Well or Landmark violated section 1962(c).

*Sedima,* 6 Legal Notes & Viewpoints Q. 1, 7 (1986) (hereinafter Fitzpatrick).

■ "Logic dictates that a corporation, receiving income from a pattern of racketeering in which it has participated as a principal, can invest that income in its own operations." *Pennsylvania v. Derry Construction Co.,* 617 F.Supp. 940, 943 (W.D. Pa.1985). Thus, we hold that where a corporation engages in racketeering activities and is the direct or indirect beneficiary of the pattern of racketeering activity, it can be both the "person" and the "enterprise" under section 1962(a). *See Haroco,* 747 F.2d at 402.

■ Similarly, section 1962(b) makes it unlawful to acquire an interest in or control of an enterprise through a pattern of racketeering activity. Where subsection (a) prohibits the use of money derived from racketeering to acquire an interest in an enterprise, subsection (b) prohibits engaging in racketeering activity to acquire or maintain an interest in or control of an enterprise. *See* Fitzpatrick, *supra,* at 7. Under either section 1962(a) or (b), however, the corporation necessarily must be the direct or indirect beneficiary of the pattern of racketeering activity to be both the "person" and the "enterprise." *Cf. Haroco,* 747 F.2d at 402 (corporation must be beneficiary to be "person" and "enterprise" under section 1962(a)).

■ In this case, Schreiber alleged that Serv-Well and Landmark (1) engaged in the predicate acts of racketeering; (2) received income from the pattern of racketeering activity; and (3) used that income in their operations, all in violation of section 1962(a). Schreiber has sufficiently alleged that the corporate defendants were the beneficiaries of the pattern of racketeering activity under section 1962(a) and (b). Thus, the district court erred in dismissing the RICO counts against the corporate defendants Serv-Well and Landmark for fail-

ure to allege a "person" separate from the "enterprise" under section 1962(a) and (b). "This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it." *Id.; cf. United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981) (the major purpose of RICO is to address the infiltration of legitimate business by organized crime).

### B. The Individual Defendants

■ The district court did not distinguish the individual defendants from the corporate defendants when it dismissed the RICO counts for failure to allege a "person" separate and distinct from the "enterprise." This was error. Schreiber's allegations under section 1962(a), (b), and (c) named John Lee and James Lee as the "persons" who allegedly violated those sections, and Serv-Well and Landmark as the "enterprises" involved. The complaint did not label the individual defendants as both "persons" and "enterprises" under section 1962(a), (b), or (c). The fact that the complaint named the corporate defendants as "persons" as well as "enterprises" under section 1962(a) and (b) did not affect the sufficiency of the allegations as to the individuals John Lee and James Lee. The district court erred in dismissing the RICO counts against the individual defendants based on the person-enterprise distinction.

### III. PATTERN OF RACKETEERING ACTIVITY

### A. Pleading The Pattern

■ An essential element of most civil RICO actions is an allegation that the defendant engaged in a pattern of racketeering activity.[4] Appellees contend the RICO counts were properly dismissed because Schreiber failed to allege a pattern of racketeering activity.

---

4. One of the essential elements a plaintiff must prove in a private RICO action under § 1962(a)– 1962(d) is "a pattern of racketeering activity" or the "collection of an unlawful debt." However, most of the private RICO actions involve a pat-

tern of racketeering activity rather than the collection of an unlawful debt. In this case, Schreiber alleges the appellees accomplished unlawful objectives through a pattern of racketeering activity.

Although section 1961(5) requires "at least two acts of racketeering activity" in order to establish a pattern,[5] the Supreme Court has indicated that two acts may not be sufficient. *Sedima*, 105 S.Ct. at 3285 n. 14. The Supreme Court in *Sedima*, reviewed the legislative history of RICO and concluded that "two isolated acts of racketeering activity do not constitute a pattern." *Id.* The Court stated:

> The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Id.*

As an aid in interpreting RICO's pattern requirement, the Court quoted from 18 U.S.C. § 3575(e) (1982): "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*

Schreiber alleged that appellees fraudulently obtained a shipment of Chambers' products which they sold in Schreiber's exclusive territory. Schreiber's allegations sufficiently connect the alleged racketeering activity, i.e., wire and mail fraud, with the fraudulent diversion scheme: "[T]he Defendants ... have engaged in racketeering activity ... by engaging on two or more occasions the use of the United States mail and/or use of interstate telephone calls for the purpose of executing or attempting to execute the aforesaid fraudulent scheme...." Complaint ¶ 30. These allegations satisfy the Supreme Court's re-

quirement of a "showing of a relationship." *Sedima*, 105 S.Ct. at 3285 n. 14. They also satisfy the pattern requirement of this circuit. *See United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir.1982) ("[t]he pattern may be established by showing two or more acts that constitute offenses, conspiracies, or attempts of the requisite type, as long as the defendant committed two of the acts and both of them were connected by common scheme, plan or motive"), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983); *see also Miller*, 777 F.2d at 498 (a pattern is "at least two acts that are sufficiently related").

Schreiber's allegations did not establish, however, the "threat of continuing activity." *Sedima*, 105 S.Ct. at 3285 n. 14. The complaint alleged the fraudulent diversion of a single shipment of Chambers' products in 1982. This appears to be an "isolated event." *See id.* Because of the failure to allege facts establishing the "threat of continuing activity," Schreiber's complaint did not meet the requirement of a showing of "continuity plus relationship which combines to produce a pattern." *Id.* The RICO counts were properly dismissed for failure to state a claim on this ground.

## B. Pleading The Racketeering Activity

"Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as including any act "indictable" under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime. Schreiber alleged in its complaint that appellees committed at least two violations of section 1341 and/or section 1343 in carrying out their scheme to defraud. Appellees argue that Schreiber's complaint fails to state a claim "because there was no mail or wire fraud on the facts of this case." We disagree with appellees.

 To allege a violation of the mail fraud statute, it is necessary to show that

---

**5.** Section 1961(5) states that a pattern "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity."

(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *United States v. Green*, 745 F.2d 1205, 1207–08 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985); *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). Similarly, a wire fraud violations consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud. *United States v. Louderman*, 576 F.2d 1383, 1387–88 & n. 3 (9th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978); *Bohonus*, 628 F.2d at 1171 & n. 7. The requirement of specific intent under these statutes is satisfied by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension,' and this intention is shown by examining the scheme itself." *Green*, 745 F.2d at 1207 (quoting *Bohonus*, 628 F.2d at 1172). In a charge involving mail or wire fraud, it is not necessary to show that the scheme was successful or that the intended victim suffered a loss or that the defendants secured a gain. *Louderman*, 576 F.2d at 1387 (quoting *United States v. O'Malley*, 535 F.2d 589, 592 (10th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976)). This is consistent with the purpose of the statutes, which is to proscribe the use of the mails or wires in any situation where it is closely entwined with fraudulent activity. *See United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir.1981).

■ Schreiber alleged the following:

1. Defendants "fabricated a scheme to deceive Chambers...." Complaint ¶ 11.

2. "In furtherance of the fraudulent scheme ... Defendants ... represented to Chambers that Chambers products purchased by Landmark were not intended to be and would not be sold to retail dealers in the 48 contiguous states...." Complaint ¶¶ 12, 14.

3. "The representations made to Chambers ... were false ... [and] were made for the purpose of inducing Chambers to sell its products to Landmark." Complaint ¶ 15.

4. "The true intention of Defendants ... was at all times for Landmark to transfer all products purchased from Chambers to Serv-Well in southern California." Complaint ¶ 16.

5. "[T]he Defendants ... have engaged ... on two or more occasions the use of the United States mail and/or use of interstate telephone calls for the purpose of executing or attempting to execute the aforesaid fraudulent scheme...." Complaint ¶ 30.

Schreiber has alleged a scheme to defraud, the use of the mails and/or telephones in furtherance of the scheme, and the specific intent to defraud. Construing the allegations of the complaint favorably to the pleader as we must, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), Schreiber pleaded the elements of mail and wire fraud sufficiently to withstand a motion to dismiss.

### C. Specificity Of Fraud Allegations

■ Appellees contend that Schreiber failed to plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed.R.Civ.P. 9(b). This contention has merit.

Rule 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." We have held that Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir.1977); *see also Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973).

We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *See Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985) (citing *Miscellaneous Service Workers, Drivers & Helpers v. Philco-Ford Corp.,* 661 F.2d 776, 782 & n. 16 (9th Cir.1981)); *Bosse,* 565 F.2d at 611; *see also Lewis v. Sporck,* 612 F.Supp. 1316, 1325 (N.D.Cal. 1985) (allegations of mail fraud under section 1962(a)–1962(c) "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme").

Schreiber's complaint alleged that:

[T]he Defendants Serv-Well, Landmark, John W. Lee and James A. Lee have engaged in racketeering activity ... by engaging on two or more occasions the use of the United States mail and/or use of interstate telephone calls for the purpose of executing or attempting to execute the aforesaid fraudulent scheme ... all of which conduct or acts are indictable under the provisions of Title 18, United States Code, Section 1341 (relating to mail fraud) and Section 1343 (relating to wire fraud).

Complaint ¶ 30. However, the allegations describing the operative events failed to mention any use of the mails or telephones. Complaint ¶¶ 1–26. The allegations of paragraph 30, standing alone, were not sufficiently particular to satisfy Rule 9(b).

## IV. DISMISSAL OF RICO COUNTS WITH PREJUDICE

■■■ Schreiber contends the district court erred in dismissing with prejudice the RICO counts without allowing Schreiber leave to amend. We agree.

Fed.R.Civ.P. 15(a) provides, *inter alia,* that "a party may amend his pleading once as a matter of course at any time before a responsive pleading is served...." We have stated that " '[a] motion to dismiss is not a "responsive pleading" within the meaning of the Rule. Neither the filing nor granting of such a motion before an-

swer terminates the right to amend; an order of dismissal denying leave to amend at that state is improper....' " *Mayes,* 729 F.2d at 607 (quoting *Breier v. Northern California Bowling Proprietors' Association,* 316 F.2d 787, 789 (9th Cir.1963)). If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency. *Bonanno v. Thomas,* 309 F.2d 320, 322 (9th Cir.1962).

We find no indication of such a determination in this record. It is of no consequence that no request to amend the pleading was made in the district court. *Id.*

Schreiber filed its complaint on November 9, 1983, and defendants filed their motion to dismiss on December 29, 1983. The district court dismissed the complaint without leave to amend on May 16, 1984. Defendants never filed a responsive pleading to the complaint. The district court did not find that allegation of other facts could not possibly cure the deficiency. Because the district court did not determine, nor can we conclude, that the allegation of other facts could not possibly cure the deficiencies in Schreiber's complaint, the district court abused its discretion in dismissing the RICO counts with prejudice.

## V. CONCLUSION

The district court erred in dismissing Schreiber's RICO claims for:

1. failure to allege a connection to organized crime;

2. failure to allege a separate racketeering injury;

3. failure to allege special facts relating to standing; and

4. failure to allege a "person" separate and distinct from the "enterprise" under section 1962(a), (b), and (c) with respect to the individual defendants John Lee and James Lee.

The district court erred in dismissing the RICO counts against the corporate defendants Serv-Well and Landmark for failure to

allege a "person" separate from the "enterprise" under section 1962(a) and (b). Schreiber sufficiently alleged that the corporate defendants were the beneficiaries of a pattern of racketeering activity under section 1962(a) and (b).

Furthermore, Schreiber failed to allege facts establishing the "threat of continuing activity" and did not plead a pattern under *Sedima.* Schreiber's complaint sets forth the elements of the predicate acts, mail and wire fraud; however, they are not pleaded with sufficient specificity under Fed.R. Civ.P. 9(b).

Nevertheless, the district court abused its discretion by dismissing the RICO counts with prejudice. Defendants had not filed a responsive pleading and the district court did not determine that the allegation of other facts could not possibly cure the deficiencies. The district court also dismissed with prejudice Schreiber's claims under 18 U.S.C. § 1962(d). Upon remand, Schreiber should be allowed to replead these allegations as well.

REVERSED and REMANDED with instructions to the district court to allow Schreiber to amend its complaint.

KENNEDY, Circuit Judge, concurring:

The potential range of criminal prosecution under the federal mail and wire fraud laws is vast, made so in part by expansive judicial interpretation. *United States v. McNeive*, 536 F.2d 1245, 1247 (9th Cir. 1976); *Gregory v. United States*, 253 F.2d 104, 110 (5th Cir.1958). The reach of those statutes exists against a backdrop of prosecutorial discretion, however, discretion which, if sensitively exercised, operates as a check to the improvident exertion of federal power. No such check operates in the civil realm. A company eager to weaken an offending competitor obeys no constraints when it strikes with the sword of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982) (RICO).

It is most unlikely that Congress envisaged use of the RICO statute in a case such as the one before us, but we are required to follow where the words of the statute lead, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), and I agree with my colleagues that a claim for relief might be stated on these facts. Thus, federal power inches forward when a statute is left unattended, whether from Congress' indifference or its acquiescence. I concur.