June HARWOOD, an individual
Plaintiff—Appellee,

v.

INTERNATIONAL ESTATE PLAN-
NERS, a Nevada Corporation; Ramo-
na Grant–McCarthy; Robert Grant–
McCarthy, individuals; the Heirs &
Devisees of Robert McCarthy 1–50, un-
known individuals and/or entities De-
fendants—Appellants.

No. 01–55693.
D.C. CV–99–1583–GLT.

United States Court of Appeals,
Ninth Circuit.

Submitted * April 2, 2002.

Decided April 25, 2002.

* The Panel unanimously finds this case suitable for decision without oral argument. *See* Fed.  R.App.P. 34(a)(2).

Before HAWKINS and FISHER, Circuit Judges, and WEINER, District Judge **

## MEMORANDUM ***

Ramona Grant appeals from the district court's summary judgment and its award of $750,000 to plaintiff June Harwood on Harwood's claims brought pursuant to the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(b) (RICO), as well as state law and equity claims. We affirm in part, reverse in part, and remand.

The facts are well known to the parties and will be repeated here only to the extent necessary to explain our holding. The district court held under California law that Ramona and International Estate Planners, Inc., d/b/a First National Trust Corporation ("International") breached a contract with Harwood to properly invest her money, were liable under Harwood's thirteenth cause of action alleging an equitable claim under California's "money had and received" doctrine, that Harwood could pierce the corporate veil to hold Ramona personally liable for using the money on her personal expenses, and that Ramona and her now deceased husband Robert's actions violated RICO § 1962(b). The district court thus granted Harwood summary judgment on the RICO claim, the breach of contract claim and the equitable claim. Harwood opted to dismiss without prejudice the remaining claims contained in the complaint and take judgment on the claims adjudicated by the motion.

Based on the record before it on summary judgment,[1] the district court found

---

** Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. The proceedings leading to the grant of Harwood's summary judgment motion were rife with discovery abuses. The record re-

as a matter of law that International was the alter ego of Ramona and Robert and pierced the corporate veil to impose liability upon Ramona. This conclusion also led the district court to impose RICO liability upon Ramona under § 1962(b). The court reasoned that the legal effect of ignoring a corporate facade is to treat the business entity as a general partnership; under partnership law, each general partner, i.e. Ramona and Robert, is liable for any acts that the partnership commits. Accordingly, the court found that Robert's acts of mail and wire fraud provided the necessary predicate acts and scienter under § 1962(b), and Ramona was liable as a member of the enterprise.

■ We find the district court's entry of summary judgment on the RICO count was erroneous. Section 1962(b) makes it unlawful to acquire an interest in or control of an "enterprise" through a pattern of racketeering activity. *Schreiber Distributing Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1398 (9th Cir.1986). Harwood failed to established the enterprise element as a matter of law.

The definition of "enterprise" encompasses both groups with a formal legal structure and those whose members merely associate in fact. Either way, however, a group does not constitute an enterprise unless it exists independently from the racketeering activity in which it engages. At minimum, it must have "some sort of structure ... for the making of decisions" and "some mechanisms for controlling and directing the affairs of the group on an ongoing, rather than an ad hoc, basis." A group whose members collectively engage in an illegal act, in-and-of-itself, does not constitute an "enterprise" for the purposes of RICO.

*Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073, 1083 (9th Cir.2000) (internal citations omitted) *cert. denied,* (531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001). The conspiracy between Robert and Ramona to defraud Harwood and the other elderly victims does not satisfy the definition of "enterprise." *Id.* (quoting *Chang v. Chen,* 80 F.3d 1293, 1300 (9th Cir.1996)) (conspiracy is not an enterprise for the purposes of RICO). As in *Chang,* Harwood has failed to establish that Robert and Ramona "utilized a structure separate and apart from the predicate acts to distribute the proceeds of the transactions" which existed independently from the racketeering activity in which it engaged. 80 F.3d at 1300.

■ Ramona next argues that there was no evidence of any contract between International and Harwood to support the entry of summary judgment on the contract claim because there was no written contract between them. We cannot agree. Harwood's declaration establishes that Robert agreed to invest money for Harwood in a conservative investment vehicle appropriate for an elderly widow. In exchange for depositing $150,000 with International, her funds would be invested with the Fortis Funds. Thereafter Harwood received written statements indicating the money was on account with International. When she became suspicious and requested her money be returned, she discovered she had been defrauded.

flects that the plaintiff filed three motions for sanctions arising from discovery abuses, the last two of which were granted. Ramona failed to serve opposing counsel with a certified witness list and failed to identify by both name and address the witnesses she intended to call. She and International also failed to comply with the court's order to produce copies of International's records. Due to these discovery abuses, Ramona was eventually precluded from introducing or using testimony of any witness not identified, or any document not produced. She has not appealed the sanctions order.

We find no error in the conclusion that Harwood's agreement to entrust Robert with her assets, coupled with the account statements, constitutes sufficient evidence that an investment contract was formed. Harwood made her deposit in exchange for Robert's promise to properly invest her assets. That promise was breached when the money was diverted to Robert and Ramona's own purposes.

Ramona also argues that the formation of a contract was an impossibility because the checks Harwood gave to Robert were made payable to "Trust," a nonexistent entity. This assertion is immaterial as well as a misstatement of the content of the record. The checks were made payable by Harwood to "First International Trust Corp." a name under which the defendant corporation was doing business and thus synonymous with the corporate entity which the district court found to be Ramona and Robert's alter ego. Legally, therefore, the money was paid to and the investment contract entered into with Ramona and Robert.[2]

We also find no error in the district court's conclusion that International was the alter ego of Robert and Ramona. Under California law, "[t]here is no litmus test to determine when the corporate veil will be pierced; rather the results will depend on the circumstances of the case. There are, nevertheless, two general requirements: (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the person no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 216 Cal.Rptr. 443, 702 P.2d 601, 606 (1985). It is undisputed that the corporation engaged in no required formalities and that Ramona used corporate funds for her personal use. She cites no authority that piercing the corporate veil is inappropriate in these circumstances.

While we affirm the district court's grant of summary judgment on the fifth and thirteenth causes of action, we agree with Grant that the district court erred in awarding damages. The district court awarded $150,000 for the breach of contract claim and $150,000 for the money had and received claim. The record does not reflect how the district court arrived at these amounts. Both causes of action are based on identical facts, and it appears that Harwood has improperly recovered twice for being fraudulently induced to pay Robert McCarthy $150,000. We therefore reverse and remand with instructions to reconsider the damages award. Harwood may recover her lost $150,000 only once. Of course, the district court is free to award additional consequential damages or punitive damages, if they are warranted on causes of action 5 or 13.

Given our holding that the RICO judgment cannot be sustained, we remand the case to the district court for further proceedings on Harwood's as yet unadjudicated claims: Causes of action 4, 6, 7, 8, 9, 10, 11, and 12. *Cf. James v. Price Stern Sloan*, 283 F.3d 1064 (9th Cir.2002) (holding that partial summary judgment is appealable even where remaining claims have been dismissed without prejudice).

AFFIRMED IN PART, REVERSED IN PART, REMANDED.

Costs shall be awarded to Harwood.

---

**2.** Given the adequate basis for finding the formation of a contract and its breach by Ramona and Robert, we also reject Ramona's alternate argument, that the only relationship created between Harwood and Robert was an agency.